# IN THE UNITED STATES COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO.1:18-cv-871

| | |
|---|---|
| SENDERRA RX PARTNERS, LLC, ) | |
| ) | |
| Plaintiff, ) | COMPLAINT FOR DAMAGES |
| ) | AND INJUNCTIVE RELIEF |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |
| BLUE CROSS AND BLUE SHIELD ) | |
| OF NORTH CAROLINA, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Senderra RX Partners, LLC ("Plaintiff" or "Senderra") hereby files this Complaint for Damages and Injunctive Relief against Defendant Blue Cross and Blue Shield of North Carolina ("Defendant" or "BCBSNC") and respectfully shows the Court as follows:

## NATURE OF THE MATTER BEFORE THE COURT

1. Senderra is a specialty pharmacy that has provided its services to North Carolina residents through the BCBSNC network ("Network") since 2015, working to improve the clinical outcomes of hundreds of patients per year. Through this action, Senderra seeks damages and injunctive relief to prevent BCBSNC from wrongfully terminating Senderra's network participation agreement ("Network Participation Agreement") and from precluding North Carolina residents from using the pharmacy of their choice.

\

2. Although Senderra has been in compliance with its obligations under the Network Participating Agreement, in recent months BCBSNC has sought to impose additional requirements on Senderra—requirements that have not been uniformly applied to all specialty pharmacies in the Network. Based on BCBSNC's selective enforcement of these requirements against Senderra, BCBSNC informed Senderra on July 11, 2018, that Senderra was terminated from the Network effective October 15, 2018.

3. Senderra has been diligent in attempting to understand and address the purported deficiencies in its compliance with Network requirements. Its diligence, however, has been in vain, as BCBSNC has repeatedly altered its explanations of the requirements for continued participation in the Network, in an apparent attempt to exclude Senderra despite Senderra's willingness and ability to provide specialty pharmacy services to the residents of North Carolina.

4. BCBSNC's actions have caused, and, absent an injunction, will cause, irreparable harm to Senderra, which cannot be adequately compensated in damages, thereby warranting injunctive relief.

5. Accordingly, Senderra brings this action to enjoin BCBSNC from (1) terminating the Network Participation Agreement and (2) imposing new obligations on Senderra as conditions to its ongoing participation in the Network.

## THE PARTIES

6.     Senderra is a Texas limited liability company with its principal place of business located at 9330 LBJ Freeway, Suite 1300, Dallas, Texas 75243.  Senderra is authorized to and does business in the state of North Carolina.  Senderra has eleven members.  Nine of the members are residents of Texas, and two are residents of Louisiana.  No member of Senderra is a resident of North Carolina.

7.     BCBSNC is a North Carolina corporation with its principal place of business located at 4615 University Drive, Durham, North Carolina, 27707-3458.  BCBSNC may be served with process through its registered agent, Louis Patalano, IV, at P.O. Box 2291, Durham, North Carolina 27702-2291.

## JURISDICTION AND VENUE

8.     This Court maintains subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there exists diversity of citizenship between Senderra and BCBSNC and the amount in controversy exceeds $75,000, exclusive of costs.

9.     Venue is based on 28 U.S.C. § 1391(b) because BCBSNC resides in the Middle District of North Carolina and because a substantial part of the events or omissions giving rise to the claims in this action occurred within the Middle District of North Carolina.

3

# FACTUAL BACKGROUND

## A. Senderra

10. Senderra is a disease state management specialty pharmacy serving patients with rheumatoid arthritis, psoriasis, osteoporosis, and multiple sclerosis. Senderra's highly trained staff assists patients with all aspects of their specialty medications, coordinating with physicians, insurance providers, and other valuable resources to provide patients with the best possible care.

11. Senderra has spent years developing relationships and building trust with both patients and care providers in this highly specialized niche pharmaceutical market. As a result, Senderra takes steps to protect its confidential information, which includes patient information and medication-related processes, its goodwill among physicians, insurance providers, and patients, and its intellectual property. By doing so, Senderra is able to compete in a very competitive market.

## B. BCBSNC

12. BCBSNC offers health insurance in the state of North Carolina by contracting with various individuals, employers, or other associations. It claims to operate as an independent licensee of the Blue Cross and Blue Shield Association.

13. In its efforts to provide certain healthcare benefits to its beneficiaries, BCBSNC contracts with health care providers and pharmacies. As part of these efforts, BCBSNC contracts with some specialty pharmacies to create a special pharmacy network for its members.

14. BCBSNC acknowledges on its website that its decision to operate a specialty pharmacy network may create "a limited number of pharmacies dispensing these drugs."[1] BCBSNC nonetheless instructs its beneficiaries that they can only purchase specialty drugs from pharmacies within BCBSNC's network; otherwise, their prescriptions will not be covered. BCBSNC states that its intent in creating a narrow, exclusive specialty pharmacy network is to "provid[e] better pricing on specialty drugs."[2] BCBSNC achieves this goal by using its leverage of membership in its network to give it almost unrestrained control over specialty pharmacies that want to service North Carolina residents.

C.  **Senderra Contracts With BCBSNC**

15. Because Senderra wanted to serve North Carolina residents, it agreed to a Network Participation Agreement with BCBSNC on January 1, 2015. A copy of the Network Participation Agreement (the "Agreement") is being filed under seal as Exhibit 1 to the Complaint. In that Agreement, Senderra agreed to "participate in the Benefit Plans" for BCBSNC. Agreement at 1.

16. Under the Agreement, BCBSNC agreed to "comply with applicable laws and regulations of state, federal and other agencies having jurisdiction over us." Agreement ¶ 3.1.

---

[1] https://www.bluecrossnc.com/providers/pharmacy-program/specialty-pharmacy-network.

[2] https://www.bluecrossnc.com/providers/pharmacy-program/specialty-pharmacy-network.

17. The Agreement also guaranteed to Senderra that it would remain in BCBSNC's specialty pharmacy network unless BCBSNC elected to terminate the contract. BCBSNC could not terminate the Agreement for cause, however, without first giving Senderra notice of any "material breach" and then giving Senderra "no fewer than thirty (30) days to cure":

> <u>Termination With Cause</u>: This Agreement may be terminated at any time by either party, with cause, upon providing Written Notice of intention to terminate due to material breach of this Agreement and *allowing the breaching party no fewer than thirty (30) days to cure.* If at the end of such 30-day period the breach has not been cured, the non-breaching party may terminate immediately upon Written Notice to the breaching party.

Agreement ¶ 5.2.1 (emphasis added).

18. BCBSNC, however, failed to live up to this promise.

19. On July 11, 2018, after more than three years of participation in BCBSNC's network, Senderra received an unexpected termination letter from BCBSNC. A copy of the termination letter is attached to the Complaint as Exhibit 2. The letter stated BCBSNC was terminating the parties' agreement "pursuant to 5.2 of the Agreement" because it claimed that Senderra "does not satisfy the requirements for continued participation in the Blue Cross NC specialty pharmacy network." Ex. 2. BCBSNC provided no other explanation for the termination. The letter advised that the termination would take effect on October 15, 2018. *Id*.

20. Immediately after receiving the termination letter, Senderra called and e-mailed representatives at BCBSNC to discuss the termination notice and the participation

requirements in question. *See* 7/12/2018 E-mail from G. Davis to R. Littles (attached as Exhibit 3). Those requests for clarification went unanswered for several days.

21. Finally, after several other communications, Senderra received a response from a BCBSNC employee on July 19. *See* 7/19/2018 Email from S. Arrington to G. Davis (attached as Exhibit 4). BCBSNC, however, still could not provide any explanation for its actions, stating it could not "state the specific reason/s why SendarraRx (sic) did not meet the requirements" of the specialty pharmacy network. *Id.*

22. On July 26, a BCBSNC employee responded to Senderra's requests for further information and called Senderra. During that conversation, BCBSNC told Senderra for the first time that BCBSNC was terminating the contract because Senderra did not have a dispensing location within North Carolina. The BCBSNC employee also confirmed that the lack of a dispensing location in the state was the only requirement Senderra did not meet and was the only reason BCBSNC was excluding Senderra from the network.

23. As a result of BCBSNC's direction during that call, Senderra sought to cure the alleged breach, as it was entitled under the parties' Agreement. Senderra invested significant additional resources to purchase and staff a business location in Morrisville, North Carolina, and convert it to a dispensing pharmacy site.

24. After those efforts, Senderra notified BCBSNC via e-mail on September 13, 2018, that it would meet the only unfulfilled requirement for participation because it had "secured a location within the state of NC to dispense" and would "meet the

7

requirements for continued participation in BCBS NC's network prior to the October 15 termination date[.]" *See* 9/13/2018 E-mail from T. Jones to M. Werner (attached as Exhibit 5).

25. The following day, Senderra submitted its Pharmacy Network Requirements Verification to BCBSNC to ensure that it remained in the network without interruption. *See* 9/14/2018 E-mails and attachment from G. Davis to R. Littles (attached as Exhibit 6).

26. A few days later, BCBSNC responded and advised that—despite Senderra's efforts to obtain a dispensing location, and despite BCBSNC's prior representation that was the only unfulfilled requirement—there were "still a few outstanding items" that precluded Senderra's network participation. *See* 9/18/2018 E-mail from R. Littles to G. Davis (attached as Exhibit 7). Among these new requirements were the following demands:

- "[S]atisfactory evidence" that Senderra keeps BCBSNC's top 50 specialty drugs in stock;
- Submission of "a bill of sale or other evidence of [a] pharmacy purchase."

*Id*.

27. Regarding the in-state pharmacy location, BCBSNC mentioned *for the first time* that the location could be listed as a dispensing location only once it was "credentialed."

28. Senderra responded once again and complained of BCBSNC's demands "requiring additional documentation and raising new conditions" for participation. *See*

8

9/20/2018 E-mail from T. Jones to R. Littles (attached as Exhibit 8). Senderra noted BCBSNC's failure to raise these additional issues at any time prior in the parties' discussions, but nonetheless responded to each one. First, Senderra explained that BCBSNC's requirement that Senderra maintain the top 50 specialty drugs in stock would be impossible. Several of the drugs on the list are restricted by law or regulation and cannot be maintained by a pharmacy, either because they can only be purchased directly from a hospital or prescriber's office, or because the drug requires an active prescription for purchase. *Id.* Other drugs are by law or regulation limited distribution medications for which Senderra cannot obtain access. *Id.*

29. Second, Senderra explained it was in the process of converting its business center to a dispensing location and therefore did not need to purchase a pharmacy within the state. *Id.*

30. BCBSNC responded almost two weeks later. *See* 10/2/2018 E-mail from R. Littles to T. Jones (attached as Exhibit 9). On the drug-stock issue, BCBSNC altered the requirement and told Senderra that it needed to provide "invoices for every drug" to show Senderra's access. Senderra has since submitted invoices for each drug, as requested, except for only a few drugs that Senderra cannot, by law, purchase because they must be purchased directly by a healthcare provider or because they are limited distribution medications.

31. On the dispensing-site issue, BCBSNC again changed the requirement. BCBSNC agreed no bill of sale was required, but insisted that the site be "credentialed by Blue Cross NC[.]" *See id.*

32. In response to another request from Senderra that BCBSNC clarify this issue, BCBSNC responded only on October 11, 2018, and stated that the in-state location must not only be "credentialed by Blue Cross NC," but that it must also be "issued a permit" from the North Carolina Board of Pharmacy. *See* 10/11/2018 E-mail from B. Vick to T. Jones (attached as Exhibit 10). This was yet another new requirement.

33. North Carolina law does not require BCBSNC's credentialing for Senderra to operate an in-state "dispensing location." The credentialing requirement is imposed by BCBSNC, and it was not implicit in BCBSNC's initial demand that Senderra have an in-state dispensing location. And by the nature of BCBSNC's credentialing process, it takes months to complete because it requires additional certifications from other third-party organizations. By withholding information about its requirements for an in-state location, BCBSNC effectively has made it impossible for Senderra to timely meet the requirements and remain in BCBSNC's network.

**D.  BCBSNC's Selective Enforcement**

34. Beginning in at least September 2018, BCBSNC began contacting Senderra's customers to tell them Senderra would no longer be in-network effective October 15, 2018. Senderra learned of this tactic because some customers sent the communications to Senderra. *See* 9/10/2018 BCBSNC Letter (attached as Exhibit 11).

10

35. As part of these communications, BCBSNC encouraged Senderra's customers to look elsewhere to fulfill their specialty medications. BCBSNC even provided a list of in-network providers, which included a specialty pharmacy that is, upon information and belief, owned by or associated with BCBSNC, AllianceRX Walgreens Prime. *See id.*

36. Not all of those listed pharmacies, however, have met the requirements that BCBSNC now imposes on Senderra. A search of the North Carolina Board of Pharmacy shows, for example, that AllianceRX Walgreens Prime, has no licensed location within the state.[3] Nor does another specialty pharmacy that will remain in BCBSNC's network.[4]

### E. Effects on Senderra and Patients

37. As a member of BCBSNC's specialty pharmacy network, Senderra services hundreds of North Carolina residents to provide them with their specialty medications. These medications are a critical part of the ongoing treatment and relief from serious medical conditions. In 2018 alone, Senderra has serviced more than 500 North Carolina residents to date.

38. These residents will be significantly harmed if BCBSNC succeeds in excluding Senderra from its network and these residents are forced to transfer their prescriptions to another specialty pharmacy. Specialty medications typically are much

---

[3] *See* https://portal.ncbop.org/verification/search.aspx.

[4] Benevere Pharmacy is listed by BCBSNC as an entity that will be in-network post-October 15, DE 1-11 at 3, but it has no licensed location within the state. *See* https://portal.ncbop.org/verification/search.aspx.

11

more complicated to administer than non-specialty medications, and patients taking these medications—and patients of Senderra—rely on personalized service from specialty pharmacies to assist with that process.

39. One healthcare provider within North Carolina already has expressed to Senderra that Senderra's exclusion from the BCBSNC network will cause "confusion for our patients, disrupt care for many patients who have used Senderra Specialty Pharmacy for years, and, we believe, will lead to a decreased level of care, adherence, and therapeutic outcomes for our patients." The provider continued that it believes Senderra "provides pharmacy services and customer care superior to the pharmacy to which our office will have to transfer our patients as a result of termination of Senderra's network access." *See* 9/13/2018 Letter from Appalachian Regional Internal Medicine Specialists at 2 (attached as Exhibit 12).

40. BCBSNC's actions have violated North Carolina law and breached the Network Participation Agreement.

## CAUSES OF ACTION

### COUNT I
### Violation of N.C. Gen. Stat. § 58-51-37

41. The allegations set forth in the preceding paragraphs are hereby incorporated by reference as if fully restated herein.

42. BCBSNC administers a "health benefit plan" within the meaning of N.C. Gen. Stat. § 58-51-37(a) and is therefore subject to the provisions of N.C. Gen. Stat. § 58-51-37.

43. North Carolina's "Pharmacy of Choice" statute provides that health benefit plans like that administered by BCBSNC shall not, among other things:

> (1) Prohibit or limit a resident of this State, who is eligible for reimbursement for pharmacy services as a participant or beneficiary of a health benefit plan, from selecting a pharmacy of his or her choice when the pharmacy has agreed to participate in the health benefit plan according to the terms offered by the insurer; or
>
> (2) Deny a pharmacy the opportunity to participate as a contract provider under a health benefit plan if the pharmacy agrees to provide pharmacy services that meet the terms and requirements, including terms of reimbursement, of the insurer under a health benefit plan, provided that if the pharmacy is offered the opportunity to participate, it must participate or no provisions of G.S. 58-51-37 shall apply;

N.C. Gen. Stat. § 58-51-37(c)(1)-(2).

44. Senderra has at all times agreed, and continues to agree, to provide pharmacy services that meet the terms and requirements, including terms of reimbursement, of BCBSNC under its benefit plan.

45. Senderra has been part of BCBSNC's Network since 2015, providing specialty pharmacy services to North Carolina residents pursuant to Senderra's Network Participation Agreement with BCBSNC.

46. Despite Senderra's willingness to participate in the Network, on July 11, 2018, BCBSNC notified Senderra that its participation in the Network was terminated effective October 15, 2018. No reasons were specified for this termination other than BCBSNC's claim that Senderra had failed to comply with Network requirements.

47. After Senderra's diligent inquiries into the reasons for the termination, it became apparent that BCBSNC's claim that Senderra had failed to satisfy BCBSNC's requirements was unfounded. In addition, BCBSNC's description of these requirements is vague, and has changed on numerous occasions over the course of the parties' communications.

48. Moreover, the new and unfounded obligations that BCBSNC seeks to impose on Senderra are not applied to all pharmacies with equal force and in an equal manner. For example, whereas BCBSNC appears to fault Senderra for not securing certain accreditations for its dispensing facility—a facility Senderra established in a good faith attempt to meet BCBSNC's new requirements—other pharmacies are allowed to remain in the Network without maintaining a North Carolina dispensing facility with these accreditations, a requirement BCBSNC seeks to impose on Senderra.

49. By imposing new, unfounded, and arbitrary obligations on Senderra as conditions for its continued participation in the Network, BCBSNC denies Senderra the opportunity to participate as a contract provider under BCBSNC's health benefit plan.

50. By denying Senderra the opportunity to participate as a contract provider under BCBSNC's health benefit plan, BCBSNC in turn prohibits or limits residents of North Carolina who are eligible for reimbursement for pharmacy services as participants or beneficiaries of BCBSNC's health benefit plan from selecting Senderra as the pharmacy of their choice.

14

51. By engaging in the acts described above, BCBSNC provides a health benefit plan providing for pharmaceutical services to residents of North Carolina that does not conform to, and violates, the provisions of the "Pharmacy of Choice" statute, N.C. Gen. Stat. § 58-51-37. *See* N.C. Gen. Stat. § 58-51-37(k).

52. As a result of BCBSNC's violation of N.C. Gen. Stat. § 58-51-37, and absent an injunction precluding BCBSNC from excluding Senderra from the Network, Senderra will suffer irreparable harm in that Senderra will lose its ability to provide specialty pharmacy services to the residents of North Carolina who have depended on and chosen to use its services. Senderra will suffer loss of goodwill and reputational harm to its business, not compensable in money damages. In addition, Senderra will suffer money damages from the loss of revenue from the sale of specialty pharmacy services to the residents of North Carolina.

53. Senderra, as a pharmacy aggrieved by BCBSNC's violations, therefore is entitled to damages and injunctive relief against BCBSNC pursuant to N.C. Gen. Stat. § 58-51-37(h).

## COUNT II
### Breach of Contract

54. The allegations set forth in the preceding paragraphs are hereby incorporated by reference as if fully restated herein.

55. BCBSNC and Senderra entered into the Network Participation Agreement effective January 1, 2015. The Network Participation Agreement is a valid, enforceable contract.

56. Section 5.2.1 of the Network Participation Agreement provides as follows:

<u>Termination With Cause</u>. This Agreement may be terminated at any time by either party, with cause, upon providing Written Notice of intention to terminate due to material breach of this Agreement and allowing the breaching party no fewer than thirty (30) days to cure. If at the end of such 30-day period the breach has not been cured, the non-breaching party may terminate immediately upon Written Notice to the breaching party.

57. BCBSNC failed to comply with Section 5.2.1 of the Network Participation Agreement. On July 11, 2018, BCBSNC sent Senderra a letter informing it that it was terminated from the Network effective October 15, 2018. The letter did not, however, (1) specify the Network requirements that Senderra had failed to meet; (2) state that failure to meet such requirements was a material breach; or (3) state that Senderra had an opportunity to cure such material breach within thirty days. Instead, BCBSNC left Senderra to search for possible explanations for this sudden termination. To date, BCBSNC still has not stated that (1) Senderra's alleged failure to meet the purported additional Network requirements constitutes a material breach of the Network Participation Agreement; or (2) Senderra has an opportunity to cure such material breach within thirty days, as Section 5.2.1 of the Network Participation Agreement requires.

58. In order to comply with Section 5.2.1, BCBSNC must give Senderra the opportunity to cure a material breach within thirty days. It is implicit in the Network Participation Agreement that, to give Senderra the required opportunity to cure, BCBSNC must identify how it believes Senderra is in material breach of the Agreement.

16

59. Through the conduct described above, BCBSNC has failed to give Senderra an opportunity to cure its alleged material breach. This constitutes a breach of Section 5.2.1 of the Network Participation Agreement.

60. Further, BCBSNC's violations of the North Carolina "Pharmacy of Choice" Statute, described in Count I above, constitute an additional breach of the Network Participation Agreement. Section 3.1 of the Agreement requires BCBSNC to "comply with applicable laws and regulations of state, federal and other agencies having jurisdiction over [it]." By violating the "Pharmacy of Choice" Statute—which is indisputably an "applicable law" covered by the Agreement—BCBSNC has breached Section 3.1.

61. Through the actions described above, BCBSNC has materially breached the Network Participation Agreement.

62. Absent an injunction preventing BCBSNC from terminating the Network Participation Agreement, Senderra will suffer irreparable harm, as it will lose its ability to provide specialty pharmacy services to the residents of North Carolina who have depended on and chosen to use its services. Senderra will suffer loss of goodwill and reputational harm to its business, not compensable in money damages. In addition, Senderra will suffer money damages from the loss of revenue from the sale of specialty pharmacy services to the residents of North Carolina.

63. Senderra has performed all conditions precedent under the Network Participation Agreement. Senderra is currently a member of the Network and provides

specialty pharmacy services to residents of North Carolina in accordance with the Network Participation Agreement.

## COUNT III
### Violation of N.C. Gen. Stat. § 75-1.1

64. The allegations set forth in the preceding paragraphs are hereby incorporated by reference as if fully restated herein.

65. BCBSNC's practices of (1) arbitrarily imposing additional conditions for Senderra's participation in the Network, (2) providing vague and conflicting explanations as to what those additional requirements entail, (3) imposing these obligations on Senderra while allowing other similar pharmacies to remain in the Network, and (4) notifying patients that Senderra will be terminated from the Network (thereby forcing them to seek another pharmacy for their specialty drug needs) all constitute unfair and deceptive trade practices that violate N.C. Gen. Stat. § 75-1.1.

66. BCBSNC's actions as alleged in paragraph 65 constitute substantial aggravating circumstances that amount to more than a mere breach of contractual obligations under the Network Participation Agreement.

67. BCBSNC's unfair and deceptive conduct as alleged above is in or affecting commerce, as it relates to the sale of specialty pharmacy prescription drugs and the provision of a health benefit plan to residents of North Carolina.

68. BCBSNC's conduct has proximately caused injury to Senderra. By refusing to give Senderra a fair opportunity to participate in the Network—or to cure any defects that purportedly prevent it from participating in the Network—BCBSNC deprives

Senderra of its ability to engage in its business operations and provide the specialty pharmacy services on which hundreds of North Carolina residents depend.

69. The injuries BCBSNC has caused entitle Senderra to treble damages pursuant to N.C. Gen. Stat. § 75-16.

70. Senderra is also entitled to attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1(1).

## PRAYER FOR RELIEF

WHEREFORE, for all of the foregoing reasons, Senderra respectfully requests that the Court grant the following relief:

1. Judgment entered in favor of Senderra and against BCBSNC for actual damages in an amount to be determined at trial;

2. An Order enjoining BCBSNC from (a) terminating the Network Participation Agreement and (b) imposing new obligations on Senderra as conditions to its ongoing participation in the Network;

3. An award of Senderra's damages;

4. An award of Senderra's reasonable attorneys' fees and court costs in prosecuting this action;

5. An award to Senderra of pre-judgment and post-judgment interest on all sums awarded at the highest rate permitted by law; and

6. An award to Senderra of such further relief, legal and equitable, to which it is justly entitled.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Senderra hereby demands a trial by jury of all issues so triable.

This the 15th day of October, 2018.

/s/ Paul K. Sun, Jr.
Paul K. Sun, Jr.
N.C. State Bar No. 16847
paul.sun@elliswinters.com
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina  27636
Telephone:  (919) 865-7000
Facsimile:  (919) 865-7010

*Attorneys for Plaintiff Senderra RX Partners, LLC*

**OF COUNSEL**
Marc D. Katz
Texas State Bar No. 00791002
marc.katz@dlapiper.com
M. Todd Mobley
Texas State Bar No. 24103322
todd.mobley@dlapiper.com
Adam H. Pierson
Texas State Bar No. 24074897
adam.pierson@dlapiper.com
DLA PIPER LLP (US)
1717 Main Street, Suite 4600 Dallas, TX 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545